UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 04-4923(DSD/SRN)


Cherne Contracting Corporation,

        Plaintiff,

v.                                                          **ORDER**

Marathon Petroleum Company,

        Defendant.

    Eric J. Nystrom, Esq., John C. Ekman, Esq., Mark H. Zitzewitz, Esq. and Lindquist & Vennum, 4200 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, counsel for plaintiff.

    Timothy J. Nolan, Esq., Emily J. Piper, Esq. and McGrann, Shea, Anderson, Carnival, Straughn & Lamb, 800 Nicollet Mall, Suite 2600, Minneapolis, MN 55402.


This matter is before the court on defendant's motion for summary judgment. After a review of the file, record and proceedings herein, and for the following reasons, defendant's motion for summary judgment is granted in part.


**BACKGROUND**

This federal diversity action arises from the termination of a business relationship between plaintiff Cherne Contracting Corporation ("Cherne") and defendant Marathon Petroleum Company LLC ("Marathon") in September 2004. Cherne is a heavy industrial contractor that focuses primarily on petro-chemical and power

industries, with its principal place of business in Eden Prairie, Minnesota. Marathon is a refining, marketing and transportation company that owns and operates a crude oil refinery in Detroit, Michigan.

Marathon approached Cherne in February 2004 about the possibility of performing Complex 1 Crude Unit revamp work at its Detroit refinery. At a February 26, 2004, meeting with Bill Cherne, Cherne's President and CEO, the parties discussed Cherne performing the pre-turnaround and turnaround phases of the revamp work.[1] Cherne submitted a proposal to perform the revamp work to Marathon on April 15, 2004, and a revised proposal on April 29, 2004. Based upon the April 29 revision, the parties signed a "Letter of Intent" ("Letter") on May 10, 2004, indicating Marathon's intent to award Cherne a "time and material" contract ("Contract") for the revamp work at the Detroit refinery. Award of the Contract, however, was contingent upon the following:

1. A contract based upon [Marathon's] model document dated April 5, 2004 being <u>verbally</u> agreed by both parties on or before <u>May 24, 2004</u> .... Both parties shall then execute such Contract on a mutually agreed date on or before May 28, 2004;

2. Mutual agreement on a [time and material] cost estimate for the Work to be performed. Such

---

[1] Despite some disagreement in the record as to the proper terminology, the court will use "pre-turnaround" to refer to all work done in preparation for the "turnaround" work, which is work done while a refinery is shut down.

2

>            estimate shall be based upon mutually agreed [time
>            and material] rates and terms stipulated in
>            [Cherne's] Proposal;
>
> 3.   ...
>
> 4.   Any unresolved issues regarding full compliance
>      with [Marathon] requirements, including but not
>      limited to, [time and material] cost estimate,
>      scope of work, schedule, manpower, equipment,
>      payment, cost and progress monitoring requirements,
>      insurance, license agreements, if applicable, the
>      definition of Mechanical Completion, or any other
>      unresolved contractual, commercial or technical
>      matter being resolved to [Marathon's] satisfaction
>      prior to execution of the Contract;
>
> 5.   ...
>
> 6.   ...
>
> 7.   Personnel availability dates satisfactory to
>      [Marathon] in order to accommodate a completion
>      date of <u>November 18, 2004</u>;
>
> 8.   [Cherne's] agreement that in the event any or all
>      of the above contingencies are not satisfied,
>      Contract Article 22, '<u>Termination</u>' of the terms and
>      conditions included in the proposed Contract shall
>      govern as to the rights of the parties in the event
>      of termination of this Letter of Intent.

(Def. Ex. C.)

Contract Article 22 provides that Marathon, "at its sole discretion, shall have the right to terminate this Contract, in whole or in part, without cause, at any time by notice in writing to [Cherne]." Article 22 also states that:

> Upon termination of this Contract, [Marathon's]
> liabilities will be limited to payment of all reasonable
> legitimate outstanding reimbursable expenses, the balance
> of [Cherne's] fee, if applicable, up to date of
> termination, and all other reasonable and verifiable
> costs for materials and subcontracted services properly

> ordered by [Cherne] and for which [Cherne] is legally obligated to pay in connection with the Work. In no event shall [Cherne] be entitled to payment for work unperformed at the time of the termination of the Contract or for anticipated profits or any damages because of such termination.

(Def. Ex. E.)

The Letter further permitted payment to Cherne of up to $50,000 to begin the pre-turnaround work but provided that "[i]n the event the Contract is not executed on or before May 28, 2004 and [the Letter] is not extended by [Marathon], then [Cherne] shall, cease all work and turn over all work in progress to [Marathon]." On May 26, 2004, the parties extended the execution deadline until June 14, 2004, and increased the authorized expenditure cap to $100,000. Cherne began the pre-turnaround work in June pursuant to the agreed-upon commercial terms of Cherne's April 29 proposal. These terms included reimbursement by Marathon of Cherne's costs on a time and material basis, with an eight percent markup on craft labor and fringe benefits and a five percent markup on materials, subcontracts and rented equipment. Marathon also accepted Cherne's pricing for Cherne's tools, equipment and field staff and agreed to reimburse Cherne's home office project staff costs. On June 14, 2004, the parties again extended the execution deadline until June 30, 2004, increased the authorized expenditure cap to $1,253,660 and revised Cherne's scope

of work in accordance with a June 14, 2004, e-mail from Cherne employee Derek Hansen.  Finally, on July 1, 2004, the parties extended the deadline until July 23, 2004.

The parties failed to execute the Contract by the July 23 deadline.  Nevertheless, Cherne continued the pre-turnaround work, and Marathon continued making payments according to the same commercial terms governing the parties' relationship under the Letter but in excess of the final expenditure cap.  The parties, however, did not agree upon final terms to the Contract, and on September 13, 2004, Marathon's Project Manager John S. Stefko, sent a letter terminating Marathon's "current working relationship with Cherne," effective September 17, 2004.[2]

After receiving the termination letter, Cherne stopped work, turned the project materials over to Marathon and began submitting invoices for reimbursement.  Marathon, however, refused to pay two invoices for employee severance payments and lease termination costs totaling approximately $38,000.  Cherne filed this action on December 2, 2004, asserting claims for breach of contract, promissory estoppel and unjust enrichment.  On January 13, 2005,

---

[2] Marathon provided no explanation in the letter for the termination; however, Robert S. Guilmette, Marathon's Project Contracts Administrator, stated for the first time in a November 3, 2004, e-mail to Bill Cherne that Marathon terminated the relationship because of "Cherne's anticipated poor performance" and "failure to accept reasonable performance standards." In addition, Marathon later claimed that it terminated the relationship because of excessive costs.

Marathon offered to pay the invoices in addition to roughly $30,000 in taxes. Cherne rejected the offer. After lengthy discovery, Marathon moved for summary judgment on September 17, 2007.

## DISCUSSION

### I. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support

each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial.  Id.

**II.  Breach of Contract**

The parties agree that the Letter governed their relationship until its July 23, 2004, expiration.[3]  Moreover, the parties apparently agree that after expiration of the Letter their conduct established a contract.  See Bolander v. Bolander, 703 N.W.2d 529, 542 (Minn. Ct. App. 2005) (upon expiration of contract parties' conduct may create new contract that adopts or modifies terms of former contract)(citation omitted).  The parties, however, dispute the terms governing their relationship after expiration of the Letter.  Marathon argues that the Letter's terms govern, enabling Marathon to terminate the contract at any time without notice. Cherne argues that the Letter was effectively void after its expiration and that a contract guaranteeing Cherne's services for the pre-turnaround and turnaround phases of the revamp work governed the parties' relationship.

---

[3] The Letter is distinct from a typical nonbinding letter of intent because the parties agreed to be bound by its terms pending execution of the Contract, and the letter contemplated Cherne beginning the pre-turnaround work.  See Lindgren v. Clearwater Nat'l Corp., 517 N.W.2d 574, 574 (Minn. 1994) (letters of intent generally not enforceable); Metro Office Parks Co. v. Control Data Co., 205 N.W.2d 121, 125 (Minn. 1973) (letters of intent enforceable if contain essential terms and parties manifest intent to be bound).

In Minnesota, parties to an expired contract can impliedly modify and extend the contract through their post-expiration conduct. See Fischer v. Pinske, 243 N.W.2d 733, 735 (Minn. 1976); House v. Baxter, 371 N.W.2d 26, 29 (Minn. Ct. App. 1985). The existence and terms of an implied contract are questions of fact. Eide v. State Farm Mut. Auto. Ins. Co., 492 N.W.2d 549, 555 (Minn. Ct. App. 1992) (citations omitted).

Cherne argues that the Letter no longer governed the parties' relationship because upon its expiration Cherne did not "cease all work and turn over all work in progress." Instead, Cherne - with Marathon's approval - performed work beyond that contemplated by the Letter. Moreover, Cherne argues that the parties' communications and post-expiration conduct established a contract guaranteeing Cherne's services for approximately 170,000 hours of pre-turnaround and turnaround work.

Viewing all evidence and inferences in Cherne's favor, the undisputed facts show that the parties extended and modified the Letter by their conduct. Under the Letter, the parties worked pursuant to commercial terms upon which they had agreed and intended to be incorporated into the Contract. After the Letter expired, the parties' conduct continued largely unaffected until termination of their relationship. Specifically, Cherne continued to engage in pre-turnaround work, and Marathon continued to pay for that work on a time and material basis at rates agreed to by the

parties. Although the scope of and expenditures for Cherne's work exceeded the Letter's terms, the parties' conduct established their mutual assent to the modification of those terms. Moreover, because the parties' relationship continued without execution of the Contract, the court determines that they implicitly extended the July 23 deadline. Therefore, until execution of the Contract, the modified terms of the Letter governed the parties' relationship.[4] Cf. Fischer, 243 N.W.2d at 735 (original contract extended and modified because parties behaved as if bound by most terms in original contract).

Because the modified terms of the Letter governed the parties' relationship, the remaining issue is whether paragraph eight allowed Marathon to terminate that relationship. "The cardinal purpose of construing a contract is to give effect to the intention of the parties as expressed in the language they used in drafting the whole contract." Art Goebel, Inc. v. N. Suburban Agencies, 567

---

[4] The court also notes that the litany of communications cited by Cherne do not establish an oral agreement guaranteeing Cherne's services for the pre-turnaround and turnaround work. The vast majority of the communications pre-date the Letter's July 23 expiration date. Moreover, although many of the communications contemplate Cherne performing the pre-turnaround and turnaround work and indicate Marathon's general philosophy of having the same company perform that work, none establishes the necessary offer evidencing Marathon's willingness to be bound by such a term or acceptance of such a term by Cherne. See S O Designes USA, Inc. v. Rollerblade, Inc., 620 N.W.2d 48, 53 (Minn. Ct. App. 2000) (offer, acceptance, consideration are basic elements of contract law) (citation omitted); Peters v. Mut. Ben. Life Ins. Co., 420 N.W.2d 908, 912-13 (Minn. Ct. App. 1988) (requirements for offer).

N.W.2d 511, 515 (Minn. 1997). Construction of an unambiguous contract is a legal question for the court, while construction of an ambiguous contract is a factual question for the jury. See Denelsbeck v. Wells Fargo & Co., 666 N.W.2d 339, 346 (Minn. 2003) (citations omitted). Whether a contract is ambiguous is a question of law for a court to decide. Republic Nat'l Life Ins. Co. v. Lorraine Realty Corp., 279 N.W.2d 349, 354 (Minn. 1979) (citations omitted). "A contract is ambiguous if, based upon its language alone, it is reasonably susceptible to more than one interpretation." Art Goebel, Inc., 567 N.W.2d at 515 (citation omitted). However, "[w]here the parties express their intent in unambiguous words, those words are to be given their plain and ordinary meaning." Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc., 666 N.W.2d 320, 323 (Minn. 2003) (citation omitted).

Paragraph eight provides that if any of the contingencies in the Letter are not satisfied, "Contract Article 22, 'Termination' of the terms and conditions included in the proposed Contract shall govern as to the rights of the parties in the event of termination of this Letter." (Def. Ex. C.) Cherne argues that this language does not govern termination of the Letter but rather "limits the applicability of Article 22 to post-termination rights and assumes as a predicate that a proper termination has already occurred." (Pl. Br. at 27.) Cherne's interpretation, however, would read Article 22's termination provision out of the Letter.

10

Specifically, the Letter itself established the relationship between the parties, and upon the Letter's termination no contract would remain to which Article 22's termination provision could apply. Instead of reading the termination provision out of the Letter, the court determines that the plain language of paragraph eight unambiguously incorporates Article 22. Therefore, in the event a contingency was not met, Marathon had the right to terminate the Letter "at its sole discretion . . . in whole or in part, without cause, at any time by notice in writing to [Cherne]."[5] Because the parties never executed the Contract, Marathon properly exercised this right in its September 13 termination letter.[6]

---

[5] In support of its interpretation, Cherne points to other letters of intent prepared by Marathon expressly stating that "in the event any or all of the above contingencies are not satisfied or should [Marathon], at its sole discretion and for any reason, decide to terminate this Letter of Intent, Contract Article 22 . . . shall govern as to the rights of the parties." (Pl. Ex. 255) Cherne argues that the phrase "at its sole discretion and for any reason" establishes that Marathon understood how to prepare a letter of intent establishing an "at will" relationship and that its failure to include this language in the Letter shows that the parties did not intend Article 22 to apply to termination of the Letter. This language, however, only modifies the circumstances in which termination would be proper. In other words, the language would allow Marathon to terminate the letter of intent for any reason instead of only when any or all of the contingencies have not been met.

[6] The issue of Marathon's liabilities, if any, under Contract Article 22 remains. Marathon states in its brief that the Letter, "by its clear terms," prohibits Cherne's recovery of its "alleged unrecovered project expenses ($87,663.00), and unrecovered profit and overhead ... ($1,535,459.00)." (Def. Br. at 2.) Cherne does
(continued...)

11

Finally, Cherne's alternative theories of recovery assume that a valid contract did not govern the parties' relationship. See Ruud v. Great Plains Supply, 526 N.W.2d 369, 372 (Minn. 1995) (promissory estoppel only applicable where no actual contract exists); Sharp v. Laubersheimer, 347 N.W.2d 268, 271 (Minn. 1984) (no unjust enrichment recovery if express contract exists). The court has determined that the Letter, as modified by the parties' conduct, was a valid contract. Therefore, these alternative theories fail. Accordingly, summary judgment is warranted on Cherne's promissory estoppel and unjust enrichment claims.

**CONCLUSION**

Based upon the above, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Doc. No. 85] is:

1.  Denied in part as to plaintiff's breach of contract claim;

2.  Granted as to plaintiff's promissory estoppel claim;

---

[6](...continued)
not address the scope of liability under the Letter but rather maintains throughout its brief that it is entitled to expectation damages under the alleged oral agreement. Because neither party has adequately addressed the issue of liability under the Letter, the court reserves judgment on that issue.

    3.    Granted as to plaintiff's unjust enrichment claim.

Dated:  February 11, 2008

                                                 <u>s/David S. Doty</u>
                                                 David S. Doty, Judge
                                                 United States District Court